LAWYERS FOR CLEAN WATER, INC.
Layne Friedrich (Bar No. 195431)
        Email: layne@lawyersforcleanwater.com
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155

LOS ANGELES WATERKEEPER
Arthur Pugsley (Bar No. 252200)
        Email: arthur@lawaterkeeper.org
Melissa Kelly (Bar No. 300817)
        Email:  melissa@lawaterkeeper.org
120 Broadway, Suite 105
Santa Monica, California 90401
Telephone: (310) 394-6162
Facsimile: (310) 394-6178

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit corporation;<br><br>              Plaintiff,<br><br>    v.<br><br>NATIONAL READY MIXED CONCRETE COMPANY, a California corporation;<br><br>              Defendant. | Civil Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

Complaint

Plaintiff Los Angeles Waterkeeper ("Waterkeeper" or "Plaintiff"), by and through its counsel, hereby alleges:

## I.      JURISDICTION AND VENUE

1.      This is a civil suit brought under the citizen suit enforcement provision of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"). *See* 33 U.S.C. § 1365. This Court has subject matter jurisdiction over the parties and this action pursuant to 33 U.S.C. § 1365(a)(1) and 28 U.S.C. §§ 1331 and 2201 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States).

2.      On December 7, 2017, Plaintiff issued 60-day notice letter ("Notice Letter") to National Ready Mixed Concrete ("National" or "Defendant"), which is attached hereto as Exhibit A, and incorporated by reference herein. The Notice Letter informed National of its violations of California's General Permit for Discharges of Storm Water Associated with Industrial Activities (*National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001, Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ, as amended by Order No. 2014-0057-DWQ*) (hereinafter "Storm Water Permit") and the Clean Water Act at its industrial facility located at 4988 Firestone Boulevard, South Gate, California 90280 ("Facility" or "National Facility").[1] The Notice Letter informed National of Plaintiff's intent to file suit against it to enforce the Storm Water Permit and the Clean Water Act.

3.      The Notice Letter was also sent to the registered agent for Defendant, the Acting Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IX, and the Executive Director of the State Water Resources Control Board ("State Board"), as required by 40 C.F.R. § 135.2(a)(1) and Section 505(b) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and the Executive Officer of the

---

[1] Some Facility documents submitted pursuant to coverage under the Storm Water Permit list the Facility address as 4498 Firestone. However, information available to Waterkeeper indicates that the Facility conducts industrial operations at 4988 Firestone.

Complaint                                            1

Regional Water Quality Control Board, Los Angeles Region ("Los Angeles Regional Board").

4.     More than sixty (60) days have passed since the Notice Letter was served on Defendant and the State and Federal agencies. Plaintiff is informed and believes, and thereon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting an action to redress the violations alleged in the Notice Letter and in this complaint. *See* 33 U.S.C. § 1365(b)(1)(B). This action is not barred by any prior administrative penalty under Section 309(g) of the CWA. 33 U.S.C. § 1319(g).

5.     Venue is proper in the Central District of California pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the sources of the violations are located within this judicial district.

6.     Plaintiff seeks relief for Defendant's substantive and procedural violations of the Storm Water Permit and the Clean Water Act resulting from its activities at the Facility.

## II.     PARTIES

### A.     Los Angeles Waterkeeper.

7.     Los Angeles Waterkeeper is a non-profit 501(c)(3) public benefit corporation organized under the laws of California with its main office at 120 Broadway, Suite 105, Santa Monica, California 90401.

8.     LA Waterkeeper has approximately 3,000 members who live and/or recreate in and around the Los Angeles area, including in the Los Angeles River watershed. Waterkeeper is dedicated to the preservation, protection, and defense of the all coastal and inland ground and surface waters in Los Angeles County. To further these goals, Waterkeeper actively seeks federal and state agency implementation of the Clean Water Act and, where necessary, directly initiates enforcement actions on behalf of itself, its members, and others.

9.     LA Waterkeeper's members use and enjoy the Los Angeles area watersheds, including in the Los Angeles River watershed, the Los Angeles/Long Beach Harbor, San

Pedro Bay, and the Pacific Ocean for fishing, boating, swimming, bird watching, picnicking, viewing wildlife, sailing, kayaking, hiking, engaging in scientific study, including monitoring and research activities, and/or for aesthetic enjoyment.

10.     Continuing commission of the acts and omissions alleged herein will irreparably harm Waterkeeper's members, for which harm they have no plain, speedy, or adequate remedy at law.

**D.     National Ready Mix Concrete Company.**

11.     Plaintiff is informed and believes, and thereon alleges, that National Ready Mixed Concrete Company is an owner of the Facility.

12.     Plaintiff is informed and believes, and thereon alleges, that National Ready Mixed Concrete Company has owned the Facility since at least December 7, 2012.

13.     Plaintiff is informed and believes, and thereon alleges, that National Ready Mixed Concrete Company is an operator of the Facility.

14.     Plaintiff is informed and believes, and thereon alleges, that National Ready Mixed Concrete Company has been an operator of the Facility since at least December 7, 2012.

15.     Plaintiff is informed and believes, and thereon alleges, that National Ready Mixed Concrete Company is an active California Corporation.

16.     Plaintiff refers to National Ready Mixed Concrete Company herein as the "Facility Owner and/or Operator."

17.     Plaintiff is informed and believes, and thereon alleges, that the name and address of the Registered Agent for National Ready Mixed Concrete Company is Vivian Imperial at CT Corporation, 818 W Seventh Street, Suite 930, Los Angeles, California.

**III.     LEGAL BACKGROUND**

**A.     The Clean Water Act.**

18.     The Clean Water Act requires point source discharges of pollutants to navigable waters be regulated by an NPDES permit. 33 U.S.C. § 1311(a); *see* 40 C.F.R. § 122.26(c)(1).

Complaint                                                      3

19.     Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge complies with various enumerated Sections of the CWA. Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342(b).

20.     "Waters of the United States" are defined as "navigable waters," and "all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including waters which are subject to the ebb and flow of the tide." 33 U.S.C. § 1362(7); 40 C.F.R. § 122.2.

21.     The "discharge of a pollutant" means, among other things, "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12); *see* 40 C.F.R. § 122.2.

22.     The EPA promulgated regulations defining "waters of the United States." *See* 40 C.F.R. § 122.2. The EPA interprets waters of the United States to include not only traditionally navigable waters, but also other waters, including waters tributary to navigable waters, wetlands adjacent to navigable waters, and intermittent streams that could affect interstate commerce.

23.     The Clean Water Act confers jurisdiction over waters that are tributaries to traditionally navigable waters where the water at issue has a significant nexus to the navigable water. *See Rapanos v. United States*, 547 U.S. 715 (2006); *see also N. Cal. River Watch v. City of Healdsburg*, 496 F.3d 993 (9th Cir. 2007).

24.     A significant nexus is established if the "[receiving waters], either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of other covered waters." *Rapanos*, 547 U.S. at 779; *N. Cal. River Watch*, 496 F.3d at 999-1000.

25.     A significant nexus is also established if waters that are tributary to navigable waters have flood control properties, including functions such as the reduction of flow, pollutant trapping, and nutrient recycling. *Rapanos*, 547 U.S. at 782; *N. Cal.*

Complaint                    4

1    *River Watch*, 496 F.3d at 1000-1001.

2        26.    Section 505(a)(1) and Section 505(f) of the Clean Water Act provide for

3    citizen enforcement actions against any "person" who is alleged to be in violation of an

4    "effluent standard or limitation . . . or an order issued by the Administrator or a State with

5    respect to such a standard or limitation." *See* 33 U.S.C. §§ 1365(a)(i) and 1365(f).

6        27.    National Ready Mixed Concrete Company is a "person" within the meaning

7    of Section 502(5) of the Clean Water Act. *See* 33 U.S.C. § 1362(5).

8        28.    An action for injunctive relief is authorized under Section 505(a) of the

9    Clean Water Act. *See* 33 U.S.C. § 1365(a).

10       29.    Each separate violation of the Clean Water Act subjects the violator to a

11   penalty pursuant to Sections 309(d) and 505 of the CWA. *See* 33 U.S.C. §§ 1319(d) and

12   1365(a); Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4.

13       30.    Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), permits

14   prevailing or substantially prevailing parties to recover litigation costs, including

15   attorneys' fees, experts' fees, and consultants' fees.

16       **B.**    **California's Storm Water Permit.**

17       31.    Section 402(p) of the Clean Water Act establishes a framework for

18   regulating industrial storm water discharges under the NPDES permit program. 33 U.S.C.

19   § 1342(p).

20       32.    Section 402(b) of the Clean Water Act allows each state to administer its

21   own EPA-approved NPDES permit program for regulating the discharge of pollutants,

22   including discharges of polluted storm water. *See* 33 U.S.C. § 1342(b). States with

23   approved NPDES permit programs are authorized by section 402(b) to regulate industrial

24   storm water discharges through individual NPDES permits issued to dischargers and/or

25   through the issuance of a statewide general NPDES permit applicable to all industrial

26   storm water dischargers. *See id.*

27       33.    California is a state authorized by EPA to issue NPDES permits.

28       34.    In California, the State Board is charged with regulating pollutants to protect

1  California's water resources. *See* Cal. Water Code § 13001.

2      35.    The Storm Water Permit is a statewide general NPDES permit issued by the

3  State Board pursuant to the Clean Water Act.

4      36.    Between 1997 and June 30, 2015, the Storm Water Permit in effect was

5  Order No. 97-03-DWQ, which Plaintiff refers to as the "1997 Permit."

6      37.    On July 1, 2015, pursuant to Order No. 2014-0057-DWQ the Storm Water

7  Permit was reissued, which Plaintiff refers to as the "2015 Permit."

8      38.    The 2015 Permit superseded the 1997 Permit, except for enforcement

9  purposes, and its terms are as stringent, or more stringent, than the terms of the

10  1997 Permit. *See* 2015 Permit, Finding 6.

11      39.    In order to discharge storm water lawfully in California, industrial

12  dischargers must secure coverage under the Storm Water Permit and comply with its

13  terms, or obtain and comply with an individual NPDES permit. 1997 Permit, Finding #2;

14  2015 Permit Finding #12. Prior to beginning industrial operations, dischargers are

15  required to apply for coverage under the Storm Water Permit by submitting a Notice of

16  Intent to Comply with the Terms of the General Permit to Discharge Storm Water

17  Associated with Industrial Activity ("NOI") to the State Board. *See* 1997 Permit, Finding

18  #3; *see also* 2015 Permit, Finding 17.

19      40.    Violations of the Storm Water Permit are violations of the Clean Water Act.

20  *See* 1997 Permit, Section C(1) (Standard Provisions); *see also* 2015 Permit, Section

21  XXI(A) (Duty to Comply).

22      **C.    The Storm Water Permit Discharge Prohibitions, Effluent Limitations,**

23          **and Receiving Water Limitations.**

24      41.    The Storm Water Permit contains certain absolute prohibitions. The Storm

25  Water Permit prohibits the direct or indirect discharge of materials other than storm water

26  ("non-storm water discharges"), which are not otherwise authorized by an NPDES

27  permit, to the waters of the United States. *See* 1997 Permit, Discharge Prohibition A(1);

28  *see also* 2015 Permit, Discharge Prohibition III(B).

Complaint                                6

42.     The Storm Water Permit Effluent Limitations require dischargers covered by the Storm Water Permit to reduce or prevent pollutants in storm water discharges through the implementation of Best Available Technology Economically Achievable ("BAT") for toxic or non-conventional pollutants, and Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants. Toxic pollutants are listed at 40 C.F.R. § 401.15 and include copper, lead, and zinc, among others. Conventional pollutants are listed at 40 C.F.R. § 401.16 and include biochemical oxygen demand ("BOD"), total suspended solids ("TSS"), oil and grease ("O&G"), and pH. *See* 1997 Permit, Effluent Limitation B(3); *see also* 2015 Permit, Section V(A).

43.     Pursuant to the CWA and the Storm Water Permit, dischargers must employ Best Management Practices ("BMPs") that constitute BAT and BCT to reduce or eliminate storm water pollution. 33 U.S.C. § 1311(b); 1997 Permit, Effluent Limitation B(3); 2015 Permit, Effluent Limitation V(A).

44.     EPA's NPDES Storm Water Multi-Sector General Permit for Industrial Activities ("MSGP") includes numeric benchmarks for pollutant concentrations in storm water discharges ("EPA Benchmarks").

45.     The EPA Benchmarks provide an objective standard to determine whether a facility's BMPs are successfully developed and/or implemented. *See* MSGP, 80 Fed. Reg. 34,403, 34,405 (June 16, 2015); MSGP, 73 Fed. Reg. 56,572, 56,574 (Sept. 29, 2008); MSGP, 65 Fed. Reg. 64,746, 64,766-67 (Oct. 30, 2000).

46.     The EPA Benchmarks for the following parameters are as follows: pH – 6.0 – 9.0 standard units ("s.u."); TSS – 100 mg/L; iron – 1.0 mg/L; nitrate plus nitrate as nitrogen ("N+N") – 0.68 mg/L; O&G – 15 mg/L; and aluminum – 0.75 mg/L. Additional EPA Benchmarks for heavy metals, which depend on the hardness of the receiving water, also apply to storm water discharges from the Facility.

47.     Discharges from an industrial facility containing pollutant concentrations that exceed EPA Benchmarks indicate that BMPs that meet BAT for toxic pollutants and/or BCT for conventional pollutants have not been developed and/or implemented at

Complaint                               7

the facility. *Id*.

48.     The Storm Water Permit Receiving Water Limitations prohibit storm water discharges from adversely impacting human health or the environment. *See* 1997 Permit, Receiving Water Limitation C(1); *see also* 2015 Permit, Section VI(B).

49.     Storm water discharges with pollutant levels that exceed levels known to adversely impact aquatic species and the environment are violations of Receiving Water Limitation C(1) of the 1997 Permit and Section VI(B) of the 2015 Permit.

50.     The Storm Water Permit Receiving Water Limitations also prohibit storm water discharges that cause or contribute to an exceedance of any "applicable Water Quality Standard in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan." *See* 1997 Permit, Receiving Water Limitation C(2); *see also* 2015 Permit, Receiving Water Limitation VI(A).

51.     A Water Quality Standard ("WQS") is a pollutant concentration level determined by the State Board, the various regional boards, and the EPA to be protective of the beneficial uses of the waters that receive polluted discharges.

52.     The State of California regulates water quality through the State Board and the nine Regional Boards. Each Regional Board maintains a separate Water Quality Control Plan that contains WQSs for water bodies within its geographical area.

53.     The Basin Plan for the Coastal Watersheds of Los Angeles and Ventura Counties ("Los Angeles Basin Plan") identifies the "Beneficial Uses" of water bodies in the Los Angeles region.

54.     The Basin Plan identifies the "Beneficial Uses" of the Los Angeles River that receives polluted storm water discharges from the Facility. These Beneficial Uses include: warm freshwater habitat ("WARM"), wildlife habitat ("WILD"), ground water recharge ("GWR"), and wetland habitat ("WET") as existing Beneficial Uses, and municipal and domestic supply ("MUN") and industrial service supply ("IND") as potential Beneficial Uses. *See* Basin Plan, Table 2-1.

55.     Surface waters that cannot support the Beneficial Uses of those waters listed

Complaint                                                8

in the Basin Plans due to the presence of one or more pollutants are designated as impaired water bodies pursuant to Section 303(d) of the Clean Water Act, 33 U.S.C. § 1313(d).

56.   According to the 2012 303(d) List of Impaired Water Bodies,[2] the Los Angeles River is listed as impaired for the following pollutants: ammonia, coliform bacteria, copper, lead, nutrients, oil, trash, cadmium, cyanide, diazinon, pH, and zinc.

57.   Polluted discharges from industrial sites, such as the National Facility, contribute to the degradation of impaired surface waters and aquatic wildlife dependent on these waters.

58.   Discharges of pollutants at levels above a WQS contributes to the impairment of the Beneficial Uses of the waters receiving the discharges.

59.   WQSs applicable to dischargers covered by the Storm Water Permit include, but are not limited to, those set out in the Los Angeles Basin Plan, and in the Criteria for Priority Toxic Pollutants for the State of California ("CTR"), 40 C.F.R. § 131.38.

60.   The Los Angeles Basin Plan sets forth narrative WQSs for inland surface waters and enclosed bays and estuaries for, among other things: floating material, O&G, pH, settleable matter, suspended materials, and toxic substances.

61.   The CTR includes numeric criteria set to protect human health and the environment in the State of California. Water Quality Standards; Establishment of Numeric Criteria for Priority Toxic Pollutants for the State of California Factsheet, EPA-823-00-008 (April 2000), available at: http://water.epa.gov/lawsregs/rulesregs/ctr/factsheet.cfm.

62.   Discharges with pollutant levels in excess of the CTR criteria, the Basin Plan standards, and/or other applicable WQSs are violations of Receiving Water Limitation C(2) of the 1997 Permit and Section VI(A) of the 2015 Permit.

---

[2] 2012 Integrated Report – All Assessed Waters, *available at* http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2012.shtml (last accessed on February 22, 2017).

Complaint                                   9

**D.   The Storm Water Permit Storm Water Pollution Prevention Plan Requirements.**

63.   Dischargers must develop and implement a Storm Water Pollution Prevention Plan ("SWPPP") at the time industrial activities begin. 1997 Permit, Section A(1)(a) and E(2); 2015 Permit, Sections I(I) (Finding 54), X(B). The SWPPP must identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water and authorized non-storm water discharges from the facility. 1997 Permit, Section A(2); 2015 Permit, Section X(G). The SWPPP must identify and implement site-specific BMPs to reduce or prevent pollutants associated with industrial activities in storm water and authorized non-storm water discharges. 1997 Permit, Section A(2); 2015 Permit, Section X(H). The SWPPP must include BMPs that achieve pollutant discharge reductions attainable via BAT and BCT. 1997 Permit, Section A(2); 2015 Permit, Section I(D) (Finding 32), Section X(C).

64.   The SWPPP must include: a narrative description and summary of all industrial activity, potential sources of pollutants, and potential pollutants; a site map indicating the storm water conveyance system, associated points of discharge, direction of flow, areas of actual and potential pollutant contact, including the extent of pollution-generating activities, nearby water bodies, and pollutants control measures; a description of storm water management practices; a description of the BMPs to be implemented to reduce or prevent pollutants in storm water discharges and authorized non-storm water discharges; the identification and elimination of non-storm water discharges; the location where significant materials are being shipped, stored, received, and handled, as well as the typical quantities of such materials and the frequency with which they are handled; a description of dust and particulate-generating activities; and a description of individuals and their current responsibilities for developing and implementing the SWPPP. 1997 Permit, Section A(1)-(10); 2015 Permit, Section X.

65.   The objectives of the SWPPP are to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water

discharges, to identify and implement site-specific BMPs to prevent the exposure of pollutants to storm water, and to reduce or prevent the discharge of polluted storm water from the industrial Facility. 1997 Permit, Section A(2); 2015 Permit, Section X.

66.     The Storm Water Permit requires the discharger to evaluate the SWPPP on an annual basis and revise it as necessary to ensure compliance with the Storm Water Permit. 1997 Permit, Section A(9); 2015 Permit, Section X(A)(9).

67.     The Storm Water Permit requires that the discharger conduct an annual comprehensive site compliance evaluation that includes a review of all visual observation records, inspection reports and sampling and analysis results, a visual inspection of all potential pollutant sources for evidence of, or the potential for, pollutants entering the drainage system, a review and evaluation of all BMPs to determine whether the BMPs are adequate, properly implemented and maintained, or whether additional BMPs are needed, and a visual inspection of equipment needed to implement the SWPPP. 1997 Permit, Sections A(9)(a)-(c); 2015 Permit, Section XV.

68.     Section A(9)(d) of the 1997 Permit requires that the discharger submit an evaluation report that includes an identification of personnel performing the evaluation, the date(s) of the evaluation(s), necessary SWPPP revisions, a schedule for implementing SWPPP revisions, any incidents of non-compliance and the corrective actions taken, and a certification that the discharger is in compliance with the Storm Water Permit. 1997 Permit, Section A(9)(d)(i)-(vi). If certification of compliance cannot be provided, the discharger must explain in the evaluation report why the facility is not in compliance with the Storm Water Permit. *Id*., Section A(9)(d). The evaluation report shall be submitted as part of the Annual Report specified in Section B(14) of the Storm Water Permit. *Id*.

69.     The SWPPP and site maps must be assessed annually and revised as necessary to ensure accuracy and effectiveness. 1997 Permit, Sections A(1), B(3)-(4); 2015 Permit, Sections I(J) (Finding 55), X(B)(1).

**E.     The Storm Water Permit Monitoring and Reporting Requirements.**

70.     The 1997 Permit required facility operators to develop and implement a

Complaint                                    11

monitoring and reporting program ("M&RP")[3] when industrial activities begin at a facility. 1997 Permit, Sections B(1)-(2) and E(3). The 2015 Permit requires implementation of an M&RP. 2015 Permit, Sections X(I) and XI.

71.     The M&RP must ensure that storm water discharges are in compliance with the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations specified in the 1997 Permit. *See* 1997 Permit, Section B(2) The M&RP must ensure that practices at the facility to prevent or reduce pollutants in storm water and authorized non-storm water discharges are evaluated and revised to meet changing conditions at the facility, including revision of the SWPPP. *Id.*

72.     The 2015 Permit requires facility operators to monitor and sample storm water discharges to ensure that the facility is complying with the terms of the 2015 Permit. 2015 Permit, Sections I(J) (Findings 55-56) and XI.

73.     The objectives of the M&RP are to ensure that BMPs have been adequately developed and implemented, revised if necessary, and to ensure that storm water and non-storm water discharges are in compliance with the Storm Water Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. 1997 Permit, Sections B(2)(a) and B(2)(b); 2015 Permit, Sections X(I) and XI.

74.     Section B(2)(d) of the 1997 Permit and Section XI(A)(4) of the 2015 Permit require that the M&RP shall be revised as necessary to ensure compliance with the Storm Water Permit.

75.     Section B(4)(a) of the 1997 Permit and Section XI(A) of the 2015 Permit require dischargers to conduct monthly visual observations of storm water discharges.

76.     Section B(4)(c) of the 1997 Permit and Section XI(A)(2) of the 2015 Permit require dischargers to document the presence of any floating and suspended materials, oil and grease, discolorations, turbidity, or odor in the discharge, and the source of any pollutants in storm water discharges from the facility. Dischargers are required to

---

[3] The 2015 Permit refers to this plan as the "Monitoring Implementation Plan," or "MIP."

1    maintain records of observations, observation dates, discharge locations observed, and

2    responses taken to reduce or prevent pollutants from contacting storm water discharges.

3    *See* 1997 Permit, Section B(4)(c); 2015 Permit, Section XI(A)(3).

4         77.    The Storm Water Permit also requires dischargers to revise the SWPPP as

5    necessary to ensure that BMPs are effectively reducing and/or eliminating pollutants at

6    the facility. 1997 Permit, Section B(4)(c); 2015 Permit, Section X(B)(1).

7         78.    The Storm Water Permit requires dischargers to visually observe and collect

8    samples of storm water discharges from all locations where storm water is discharged.

9    1997 Permit, Sections B(5) and B(7); 2015 Permit Section XI(B)(4).

10         79.    Section B(5)(a) of the 1997 Permit required dischargers to collect storm

11    water samples during the first hour of discharge from the first storm event of the Wet

12    Season and at least one other storm event in the Wet Season.[4] All storm water discharge

13    locations must be sampled. Facility operators that do not collect samples from the first

14    storm event of the Wet Season are still required to collect samples from two other storm

15    events of the Wet Season and must explain in the Annual Report why the first storm

16    event was not sampled.

17         80.    Section B(15) of the 1997 Permit required dischargers participating in a

18    group monitoring plan to collect at least two (2) samples from each discharge point at the

19    Facility over a five (5) year period. *See* 1997 Permit, Sections B(5), B(7), and B(15).

20         81.    The Facility was and/or is a member of the Building Materials Industry

21    Group Monitoring Program, and thus the Facility Owner and/or Operator must comply

22    with the group monitoring provisions set forth in Section B(15) of the 1997 Permit and

23    Section XI(B)(3) of the 2015 Permit.

24         82.    Section B(5)(b) required that sampling conducted pursuant to the

25    1997 Permit occur during scheduled facility operating hours that are preceded by at least

26    three (3) working days without storm water discharge.

27

28    ―――――――――――――
[4] Wet Season is defined as October 1 – May 30. *See* 1997 Permit, Section B(4)(a).

Complaint               13

83.     Section XI(B)(1) of the 2015 Permit requires sampling from a Qualified Storm Event ("QSE"), which is a precipitation event that produces a discharge for at least one drainage area, and it is preceded by forty-eight (48) hours with no discharge from any drainage area.

84.     Section XI(B)(3) of the 2015 Permit requires dischargers participating in a compliance group to collect and analyze storm water samples from one (1) QSE within the first half of each Reporting Year (July 1 to December 31) and one (1) QSE within the second half of each Reporting Year (January 1 to June 30).[5]

85.     Section XI(B)(11) of the 2015 Permit, among other requirements, provides that permittees must submit all sampling and analytical results for all samples via California's Storm Water Multiple Application & Report Tracking System ("SMARTS") electronic database within thirty (30) days of obtaining all results for each sampling event.

86.     Section B(5)(c)(i) of the 1997 Permit required dischargers to analyze each sample for pH, specific conductance ("SC"), TSS, and total organic carbon ("TOC"). A discharger may substitute analysis for O&G instead of TOC.

87.     Section B(5)(c)(ii) of the 1997 Permit required dischargers to analyze each sample for toxic chemicals and other pollutants likely to be present in significant quantities in the storm water discharged from the facility.

88.     Section B(5)(c)(iii) and Table D of the 1997 Permit and Table 1 of the 2015 Permit require facilities classified as Standard Industrial Classification ("SIC") code 3273 (Ready-Mix Concrete), such as the Facility, to also analyze storm water samples for iron, as well as other parameters required by the Regional Board.

89.     Section XI(B)(6)(a)-(b) of the 2015 Permit requires dischargers to analyze samples for TSS, O&G, and pH.

90.     Section XI(B)(6)(c) of the 2015 Permit requires dischargers to analyze

---

[5] A Reporting Year is July 1-June 30. *See* 2015 Permit, Section I(M) (Finding 62(b)).

Complaint                              14

samples for pollutants associated with industrial operations.

91.    Section XI(B)(6)(e) of the 2015 Permit requires dischargers to analyze storm water samples for additional applicable industrial parameters related to receiving waters with 303(d) listed impairments, or approved Total Maximum Daily Loads.

92.    Section B(14) of the 1997 Permit required that dischargers submit an Annual Report to the applicable Regional Board by July 1 of each year. The Annual Report must include a summary of visual observations and sampling results, an evaluation of the visual observations and sampling and analysis results, laboratory reports, the annual comprehensive site compliance evaluation report specified in Section A(9), an explanation of why a facility did not implement any activities required, and the records specified in Section B(13)(i).

93.    Section XVI of the 2015 requires dischargers to submit an annual report with a Compliance Checklist that indicates whether a discharger complies with, and has addressed all applicable requirements of the 2015 Permit, an explanation for any non-compliance of requirements within the Reporting Year, as indicated in the Compliance Checklist, an identification, including page numbers and/or Sections, of all revisions made to the SWPPP within the Reporting Year, and the date(s) of the Annual Evaluation.

**F.    The 2015 Permit Exceedance Response Actions Requirements.**

94.    When the 2015 Permit became effective on July 1, 2015, all permittees were in "Baseline status." *See* 2015 Permit, Section XII(B). A permittee's Baseline status for any given parameter changes to "Level 1 status" if sampling results indicate a Numeric Action Level ("NAL") exceedance for that same parameter. *See* 2015 Permit, Section XII(C).

95.    Level 1 status commences on July 1 following the Reporting Year during which the exceedance(s) occurred. *See* 2015 Permit, Section XII(C). By October 1 following commencement of Level 1 status, permittees are required to: complete an evaluation, with the assistance of a Qualified Industrial Stormwater Practitioner ("QISP"), of the industrial pollutant sources at the facility that are or may be related to

Complaint                                    15

the NAL exceedance(s); and identify in the evaluation the corresponding BMPs in the SWPPP and any additional BMPs and SWPPP revisions necessary to prevent future NAL exceedances and to comply with the requirements of Storm Water Permit. *See* 2015 Permit, Section XII(C)(1)(a)-(c).

96.     Although the evaluation may focus on the drainage areas where the NAL exceedance(s) occurred, all drainage areas shall be evaluated. *See* 2015 Permit, Section XII(C)(1)(c).

97.     Based upon this Level 1 status evaluation, the permittee is required to, as soon as practicable but no later than January 1 following commencement of Level 1 status, revise the SWPPP as necessary and implement any additional BMPs identified in the evaluation, certify and submit via SMARTS a Level 1 Exceedance Response Action ("ERA") Report prepared by a QISP that includes the a summary of the Level 1 ERA Evaluation and a detailed description of the SWPPP revisions and any additional BMPs for each parameter that exceeded an NAL. *See* 2015 Permit, Section XII(C)(2)(a)(i)-(ii).

98.     The permittee in Level 1 status must also certify and submit via SMARTS the QISP's identification number, name, and contact information (telephone number, e-mail address) no later than January 1 following commencement of Level 1 status. *See* 2015 Permit, Section XII(C)(2)(a)(iii).

99.     A permittee's Level 1 status for a parameter will return to Baseline status once a Level 1 ERA Report has been completed, all identified additional BMPs have been implemented, and results from four (4) consecutive qualified storm events that were sampled subsequent to BMP implementation indicate no additional NAL exceedances for that parameter. *See* 2015 Permit, Section XII(C)(2)(b).

## IV.     FACTUAL BACKGROUND

### A.     The Facility's Storm Water Permit Coverage.

100.     Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator obtained Storm Water Permit coverage for the Facility under the 1997 Permit by submitting a Notice of Intent to the State Board.

Complaint                                   16

101.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator submitted an NOI on March 5, 2015, to continue its Storm Water Permit coverage for the Facility under the 2015 Permit ("2015 NOI").

102.   The 2015 NOI identifies the "Facility Information" as "National Ready Mixed Concrete" located at "4498 Firestone Boulevard, South Gate, California, 90280."

103.   The 2015 NOI identifies the "Operator Information" of the Facility as "National Ready Mixed Concrete Company" located at "15821 Ventura Boulevard, Suite 475, Encino, California, 91436."

104.   The 2015 NOI lists the Facility as 25,056 square feet.

105.   The 2015 NOI does not describe what percentage of the Facility is impervious.

106.   The SMARTS database lists the current WDID number for the Facility as 4 19I016390.

107.   The SMARTS database lists the Facility's coverage under the Storm Water Permit as "Active."

108.   The 2015 NOI lists the "Receiving Water" as Los Angeles River.

109.   The 2015 NOI lists the SIC code for the Facility as 3273 (Ready-Mixed Concrete).

110.   Plaintiff is informed and believes, and thereon alleges, that SIC code 3273 (Ready-Mixed Concrete) applies to the Facility.

111.   Plaintiff is informed and believes, and thereon alleges, that SIC code 4231 (terminal and joint terminal maintenance Facility for motor freight transportation) applies to the Facility.

112.   Plaintiff is informed and believes, and thereon alleges, that SIC code 4212 (local trucking without storage) applies to the Facility.

**B.**   **Industrial Activities and Areas of Industrial Activity at the Facility.**

113.   Plaintiff is informed and believes, and thereon alleges, that the Facility is an active concrete batch plant that produces ready-mixed concrete.

114.   Plaintiff is informed and believes, and thereon alleges, that raw materials, including aggregate (rock, sand, and gravel), cement, fly ash, and admixtures are delivered to and stored at the Facility.

115.   Plaintiff is informed and believes, and thereon alleges, that raw materials, including aggregate (rock, sand, and gravel), cement, fly ash, and admixtures are mixed with water to create concrete at the Facility.

116.   Plaintiff is informed and believes, and thereon alleges, that raw materials, including aggregate (rock, sand, and gravel), cement, fly ash, water, and (if applicable) admixtures are added to concrete haul trucks at the Facility that mix the ingredients together to produce concrete that is transported off site.

117.   Plaintiff is informed and believes, and thereon alleges, that concrete, particulates of sand, gravel, and cement have been and continue to be tracked throughout the Facility. These pollutants accumulate at the sand and gravel storage areas and near the silos, the loading and unloading areas, and the driveways leading to and from the Facility.

118.   Plaintiff is informed and believes, and thereon alleges, that the industrial processes at the Facility also include onsite vehicle and mobile equipment operating, parking, fueling, and/or maintenance.

119.   Plaintiff is informed and believes, and thereon alleges, that the Facility includes fuel storage areas.

120.   Plaintiff is informed and believes, and thereon alleges, that the Facility includes hazardous materials storage areas.

121.   Plaintiff is informed and believes, and thereon alleges, that the Facility includes outdoor storage areas.

122.   Plaintiff is informed and believes, and thereon alleges, that the Facility includes cement silos.

123.   Plaintiff is informed and believes, and thereon alleges, that the Facility includes fly ash silos.

124.   Plaintiff is informed and believes, and thereon alleges, that the Facility

1  includes admixture storage areas.

2      125.   Plaintiff is informed and believes, and thereon alleges, that the Facility

3  includes truck washing areas.

4      126.   Plaintiff is informed and believes, and thereon alleges, that the Facility

5  includes material unloading and loading areas.

6      127.   Plaintiff is informed and believes, and thereon alleges, that the Facility

7  includes a maintenance shop and/or maintenance areas.

8      128.   Plaintiff is informed and believes, and thereon alleges, that the activities

9  and/or areas listed in paragraphs 113-127 are industrial activities and/or areas of

10  industrial activity at the Facility.

11      **C.      Pollutant Sources, Pollutants, and BMPs at the Facility.**

12      129.   Plaintiff is informed and believes, and thereon alleges, that the industrial

13  activities and areas of industrial activity listed in paragraphs 113-127 are pollutant

14  sources at the Facility.

15      130.   Plaintiff is informed and believes, and thereon alleges, that industrial

16  activities occur throughout the Facility outdoors without adequate cover to prevent storm

17  water exposure to pollutant sources.

18      131.   Plaintiff is informed and believes, and thereon alleges, that industrial

19  activities occur throughout the Facility outdoors without secondary containment or other

20  adequate containment and/or treatment measures to prevent polluted storm water from

21  discharging from the Facility.

22      132.   Plaintiff is informed and believes, and thereon alleges, that pollutants

23  associated with industrial activities and areas the Facility include, but are not limited to:

24  pH affecting substances; metals, such as iron and aluminum; toxic metals, such as lead,

25  zinc, cadmium, chromium, copper, arsenic, and mercury; chemical oxygen demand

26  ("COD"); BOD; TSS; N+N; SC; benzene; gasoline and diesel fuels; fuel additives;

27  coolants; antifreeze; total kjehldahl nitrogen ("TKN"); trash; and O&G.

28

Complaint                                        19

**D.     The Facility Storm Water Pollution Prevention Plan, Pollutant Assessment and Source Identification, and Control Measures.**

133.   The Facility SWPPP, which contains the M&RP, is publicly available via the SMARTS database and is dated June 17, 2015 ("June 2015 SWPPP").

134.   Plaintiff is informed and believes, and thereon alleges, that a site map dated June 16, 2015, which is Appendix A of the June 2015 SWPPP, is a map of the Facility ("Site Map").

135.   Plaintiff is informed and believes, and thereon alleges, that the Site Map is the only site map that the Facility Owner and/or Operator created pursuant to the Storm Water Permit for the National Facility.

136.   Plaintiff is informed and believes, and thereon alleges, that the Site Map does not identify all areas of industrial activity at the National Facility.

137.   Plaintiff is informed and believes, and thereon alleges, that the Site Map does not identify all discharge locations at the National Facility.

138.   Plaintiff is informed and believes, and thereon alleges, that the Site Map does not include locations and descriptions of structural control measures that affect industrial storm water discharges at the National Facility, including but not limited to identifying the location of detention basin(s).

139.   Plaintiff is informed and believes, and thereon alleges, that the Site Map does not identify locations where materials are directly exposed to precipitation at the National Facility.

140.   Plaintiff is informed and believes, and thereon alleges, that the Site Map for the National Facility does not include notes, legends, and other data appropriate to ensure it is clear, legible, and understandable.

141.   Section 3.1 and Table 3.1 of the June 2015 SWPPP contain the Pollution Prevention Team that identifies individuals that have responsibilities for carrying out monitoring requirements and the development, implementation and maintenance of the Facility SWPPP.

142.   Plaintiff is informed and believes, and thereon alleges, that the June 2015 SWPPP fails to identify a pollution prevention team as required by the Storm Water Permit, including identifying what individual(s) will conduct visual monitoring, what individual(s) will collect storm water samples, what individuals will implement the SWPPP and M&RP, and what procedures are developed to identify alternate team members to carry out the required actions if assigned team members are unavailable.

143.   Table 1 in Section 5 of the June 2015 SWPPP lists significant industrial materials stored or used at the Facility.

144.   Section 6.1 of the June 2015 SWPPP lists the Facility's industrial processes, and Section 6.2 identifies the material handling and storage areas.

145.   Section 6.5 of the June 2015 SWPPP discusses unauthorized and authorized non-storm water discharges, and states that "normal operations do not cause unauthorized non-storm water discharges, and that unauthorized non-storm water discharges have been "eliminated by containing process water generated at the Facility."

146.   Section 3.2 of the June 2015 SWPPP identifies the Facility as having Air Quality Permits that require the use of "water spray to control emissions form concrete bathing operations. This helps to reduce the spread of particulate matter which may become entrained in storm water discharges."

147.   Plaintiff is informed and believes, and thereon alleges, that dust-generating activities occur at the Facility, and that the Facility utilizes a water spray system as a dust suppressant during these activities.

148.   Plaintiff is informed and believes, and thereon alleges, that vehicle and equipment washing and/or cleaning occurs at the Facility.

149.   Plaintiff is informed and believes, and thereon alleges, that the activities listed in paragraphs 146-148 result in unauthorized non-storm water discharges due to inadequate BMP development and/or implementation necessary to prevent these discharges.

150.   Non-storm water discharges resulting from the activities described at

Complaint                                                21

paragraphs 146-148 are not from sources that are listed among the authorized non-storm water discharges in Special Conditions and are always prohibited under the Storm Water Permit.

151. Section 6.8 and Table 3 of the June 2015 SWPPP identifies the BMPs for the areas of industrial activity at the Facility.

152. Section 8.0, Table 5, and Table 6 of the June 2015 SWPPP lists the Facility's BMPs.

153. Section 7.0, and Table 4 of the June 2015 SWPPP include an "Assessment of Potential Pollutant Sources" identifying likely sources of pollutants and corresponding pollutants for the Facility.

154. Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator has failed and continues to fail to adequately assess pollutants associated with potential pollutant sources at the Facility.

155. Plaintiff is informed and believes, and thereon alleges, that the Facility SWPPPs do not include an adequate assessment of pollutants associated with potential pollutant sources at the Facility.

156. Plaintiff is informed and believes, and thereon alleges, that the Facility SWPPPs for do not include all areas of industrial activity at the Facility.

157. Plaintiff is informed and believes, and thereon alleges, that the Facility SWPPP do not adequately describe all industrial processes at the Facility.

158. Plaintiff is informed and believes, and thereon alleges, that the Facility SWPPPs fail to identify adequate BMPs to reduce or prevent pollutants in the discharges from the Facility.

159. Plaintiff is informed and believes, and thereon alleges, that without properly identifying all industrial activities at the Facility in the SWPPPsthe Facility Owner and/or Operator cannot and has not developed all appropriate BMPs.

160. Plaintiff is informed and believes, and thereon alleges, that without properly identifying all industrial activities at the Facility in the SWPPP, the Facility Owner and/or

1  Operator cannot and has not implemented all appropriate BMPs.

2      161.   Plaintiff is informed and believes, and thereon alleges, that the June 2015

3  SWPPP fails to contain BMPs for the trucks and vehicles leaving the Facility via the

4  driveways which are pollutant sources tracking sediment, dirt, oil and gas, metal

5  particles, and other pollutants off site.

6      162.   Plaintiff is informed and believes, and thereon alleges, that without properly

7  identifying all significant materials at the Facility in the SWPPP, the Facility Owner

8  and/or Operator cannot and has not developed all appropriate BMPs.

9      163.   Plaintiff is informed and believes, and thereon alleges, that without properly

10  identifying all significant materials at the Facility in the SWPPP, the Facility Owner

11  and/or Operator cannot and has not implemented all appropriate BMPs.

12      164.   Plaintiff is informed and believes, and thereon alleges, that because the

13  Facility SWPPPs fail to describe all of the industrial activities, the June 2015 SWPPP

14  also fails to describe all of the significant materials and processes that are related to the

15  industrial activities at the Facility.

16      165.   Plaintiff is informed and believes, and thereon alleges, that because all

17  significant materials have not been identified, the June 2015 SWPPP fails to describe the

18  locations where the materials are stored, received, shipped, and handled, or the typical

19  quantities and frequency of significant materials at the Facility.

20      166.   Plaintiff is informed and believes, and thereon alleges, that the June 2015

21  SWPPP fails to describe all of the pollutants associated with the industrial activities at the

22  Facility.

23      167.   Plaintiff is informed and believes, and thereon alleges, that the June 2015

24  SWPPP does not include an adequate assessment of the BMPs at the Facility

25  corresponding to potential pollutant sources and associated pollutants.

26      168.   Plaintiff is informed and believes, and thereon alleges, that the Facility

27  Owner and/or Operator has failed and continues to fail to assess potential pollutant

28  sources at the Facility.

Complaint                                    23

169.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator has failed and continues to fail to analyze the effectiveness of the BMPs at the Facility.

170.   Plaintiff is informed and believes, and thereon alleges, that storm water sampling at the Facility demonstrates that storm water discharges from the Facility contain concentrations of pollutants above EPA Benchmarks, including, but not limited to: iron, pH, N+N, aluminum, copper, zinc, and TSS.

171.   Plaintiff is informed and believes, and thereon alleges, that the exceedances of EPA Benchmarks demonstrate that the Facility Owner and/or Operator failed and continues to fail to develop BMPs to prevent the exposure of pollutants to storm water, and to prevent discharges of polluted storm water from the Facility.

172.   Plaintiff is informed and believes, and thereon alleges, that the exceedances of EPA Benchmarks demonstrate that the Facility Owner and/or Operator failed and continues to fail to implement BMPs to prevent the exposure of pollutants to storm water, and to prevent discharges of polluted storm water from the Facility.

173.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator has failed and continues to fail to adequately revise the Facility SWPPPs.

**E.     The Drainage Areas, Discharge Locations, and Sampling Points at the Facility.**

174.   Section 4.1 of the June 2015 SWPPP states that the Facility has one drainage area and that storm water flows to detention basins.

175.   Section 4.1 of the June 2015 SWPPP states that storm water may discharge from a detention basin into an alley, which is designated as Outfall 1.

176.   No sizing information is provided demonstrating the volume of the detention basin(s) referred to in the June 2015 SWPPP.

177.   Section 10.4.1 of the June 2015 SWPPP states that samples will be collected at the "Sampling Point described in Section 4.1 and presented on the figure in Appendix

Complaint                                24

A."

178.   Plaintiff is informed and believes, and thereon alleges, that storm water also discharges from the Facility onto Branyon Street.

179.   Plaintiff is informed and believes, and thereon alleges, that storm water also discharges from the Facility onto Firestone Street.

180.   The Facility Owner and/or Operator has not identified storm water discharges from the Facility to Branyon Street, or to Firestone Street, in the June 2015 SWPPP.

181.   Plaintiff is informed and believes, and thereon alleges, that polluted storm water from the Facility discharges into the local municipal storm drain system, which discharges into Reach 2 of the Los Angeles River.

182.   Plaintiff is informed and believes, and thereon alleges, that Reach 2 of the Los Angeles River flows to Reach 1 of the Los Angeles River, then to the Los Angeles Estuary, then the Los Angeles/Long Beach Harbor, San Pedro Bay, and then the Pacific Ocean.

183.   Plaintiff is informed and believes, and thereon alleges, that each of the receiving waters described in paragraphs 181-182 is a water of the United States.

**F.    Defendant's Sampling, Monitoring, and Reporting.**

184.   Section 10.0 of the June 2015 SWPPP includes the "Storm Water Monitoring Implementation Plan (MIP)" for the Facility.

185.   Section 10.4 of the June 2015 M&RP is the "Sampling Program" for the Facility.

186.   Table 7 of the June 2015 M&RP identifies O&G, TSS, iron, and pH as the "sampling requirements for all outfalls" at the Facility.

187.   Plaintiff is informed and believes, and thereon alleges, that the June 2015 M&RP fails to ensure that the Facility Owner and/or Operator analyze storm water discharges from the Facility for all required parameters by failing to specify that storm water discharges will be analyzed for, at a minimum, aluminum, copper, COD, BOD,

1  N+N, and zinc.

2      188.   Plaintiff is informed and believes, and thereon alleges, that the June 2015

3  M&RP fails to ensure that the Facility Owner and/or Operator collects storm water

4  samples from all discharge locations at the Facility from all storm water discharges

5  occurring during qualifying storm events.

6      189.   Plaintiff is informed and believes, and thereon alleges, that the June 2015

7  M&RP fails to ensure that all required quarterly and/or monthly visual observations are

8  conducted as required by the Storm Water Permit.

9      190.   Plaintiff is informed and believes, and thereon alleges, that the June 2015

10  M&RP fails to ensure that visual observations are recorded, and/or reported as required

11  by the Storm Water Permit.

12      191.   Via the SMARTS database, Plaintiff obtained an Annual Report for the

13  Facility dated June 6, 2013.

14      192.   Plaintiff is informed and believes, and thereon alleges, that the Annual

15  Report dated June 6, 2013, obtained from the SMARTS database is the 2012/2013

16  Annual Report for the Facility.

17      193.   Via the SMARTS database, Plaintiff obtained an Annual Report for the

18  Facility dated June 2, 2014.

19      194.   Plaintiff is informed and believes, and thereon alleges, that the Annual

20  Report dated June 2, 2014, obtained from the Los Angeles Regional Board is the

21  2013/2014 Annual Report for the Facility.

22      195.   Via the SMARTS database, Plaintiff obtained an Annual Report for the

23  Facility dated June 4, 2015.

24      196.   Plaintiff is informed and believes, and thereon alleges, that the Annual

25  Report dated June 4, 2015, obtained from the SMARTS database is the 2014/2015

26  Annual Report for the Facility.

27      197.   Via the SMARTS database, Plaintiff obtained an Annual Report for the

28  Facility dated June 28, 2016.

Complaint                                    26

198.   Plaintiff is informed and believes, and thereon alleges, that the Annual Report dated June 28, 2016, obtained from the SMARTS database is the 2015/2016 Annual Report for the Facility.

199.   Via the SMARTS database, Plaintiff obtained an Annual Report for the Facility dated June 23, 2017.

200.   Plaintiff is informed and believes, and thereon alleges, that the Annual Report dated June 23, 2017, obtained from the SMARTS database is the 2016/2017 Annual Report for the Facility.

**2012/2013 Annual Report**

201.   Plaintiff is informed and believes, and thereon alleges, that Facility Owner and/or Operator failed to include the required summary of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2012/2013 Annual Report for the Facility.

202.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2012/2013 Annual Report for the Facility.

203.   Plaintiff is informed and believes, and thereon alleges, that Facility Owner and/or Operator failed to include the required summary of its quarterly visual observations of authorized non-storm water discharges for each of its drainage areas in the 2012/2013 Annual Report for the Facility.

204.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of authorized non-storm water discharges for each of its drainage areas in the 2012/2013 Annual Report for the Facility.

205.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the required summary of its monthly visual observations of storm water discharges for each of its discharge points in the 2012/2013

Annual Report for the Facility.

206.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the required evaluation of its monthly visual observations of storm water discharges for each of its discharge points in the 2012/2013 Annual Report for the Facility.

207.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2012/2013 Annual Report for the Facility.

208.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2012/2013 Annual Report for the Facility.

209.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator certified that the Facility was in compliance with the Storm Water Permit in its 2012/2013 Annual Report.

210.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator's certification of compliance in the 2012/2013 Annual Report for the Facility was false because it failed to comply with each of the requirements of Section B(14) of the 1997 Permit.

211.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator's certification of compliance in the 2012/2013 Annual Report for the Facility was false because the Facility Owner and/or Operator had not developed and/or implemented BMPs to achieve compliance with the Storm Water Permit.

212.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator's certification of compliance in the 2012/2013 Annual Report for the Facility was false because the Facility Owner and/or Operator had not revised the Facility SWPPP to achieve compliance with the Storm Water Permit.

213.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator's certification of compliance in the 2012/2013 Annual Report Facility was false because the Facility Owner and/or Operator had not revised the Facility M&RP to achieve compliance with the Storm Water Permit.

214.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to describe instances of noncompliance at the Facility with the Storm Water Permit in its 2012/2013 Annual Report.

215.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include descriptions of steps taken to prevent recurrence of its noncompliance with the Storm Water Permit in its 2012/2013 Annual Report for the Facility.

**2013/2014 Annual Report**

216.   Plaintiff is informed and believes, and thereon alleges, that Facility Owner and/or Operator failed to include the required summary of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2013/2014 Annual Report for the Facility.

217.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2013/2014 Annual Report for the Facility.

218.   Plaintiff is informed and believes, and thereon alleges, that Facility Owner and/or Operator failed to include the required summary of its quarterly visual observations of authorized non-storm water discharges for each of its drainage areas in the 2013/2014 Annual Report for the Facility.

219.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of authorized non-storm water discharges for each of its drainage areas in the 2013/2014 Annual Report for the Facility.

220.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the required summary of its monthly visual observations of storm water discharges for each of its discharge points in the 2013/2014 Annual Report for the Facility.

221.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the required evaluation of its monthly visual observations of storm water discharges for each of its discharge points in the 2013/2014 Annual Report for the Facility.

222.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2013/2014 Annual Report for the Facility.

223.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2013/2014 Annual Report for the Facility.

224.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to collect two (2) storm water samples during the 2013/2014 Wet Season.

225.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to collect samples from each storm water discharge point during the 2013/2014 Wet Season.

226.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to analyze samples collected during the 2013/2014 Wet Season for all pollutants required by the Storm Water Permit.

227.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator certified that the Facility was in compliance with the Storm Water Permit in its 2013/2014 Annual Report.

Complaint                                    30

228.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator's certification of compliance in the 2013/2014 Annual Report for the Facility was false because it failed to comply with each of the requirements of Section B(14) of the 1997 Permit.

229.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator's certification of compliance in the 2013/2014 Annual Report for the Facility was false because the Facility Owner and/or Operator had not developed and/or implemented BMPs to achieve compliance with the Storm Water Permit.

230.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator's certification of compliance in the 2013/2014 Annual Report for the Facility was false because the Facility Owner and/or Operator had not revised the Facility SWPPP to achieve compliance with the Storm Water Permit.

231.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator's certification of compliance in the 2013/2014 Annual Report Facility was false because the Facility Owner and/or Operator had not revised the Facility M&RP to achieve compliance with the Storm Water Permit.

232.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to describe instances of noncompliance at the Facility with the Storm Water Permit in its 2013/2014 Annual Report.

233.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include descriptions of steps taken to prevent recurrence of its noncompliance with the Storm Water Permit in its 2013/2014 Annual Report for the Facility.

**2014/2015 Annual Report**

234.   Plaintiff is informed and believes, and thereon alleges, that Facility Owner and/or Operator failed to include the required summary of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2014/2015 Annual Report for the Facility.

235.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2014/2015 Annual Report for the Facility.

236.   Plaintiff is informed and believes, and thereon alleges, that Facility Owner and/or Operator failed to include the required summary of its quarterly visual observations of authorized non-storm water discharges for each of its drainage areas in the 2014/2015 Annual Report for the Facility.

237.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of authorized non-storm water discharges for each of its drainage areas in the 2014/2015 Annual Report for the Facility.

238.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the required summary of its monthly visual observations of storm water discharges for each of its discharge points in the 2014/2015 Annual Report for the Facility.

239.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the required evaluation of its monthly visual observations of storm water discharges for each of its discharge points in the 2014/2015 Annual Report for the Facility.

240.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2014/2015 Annual Report for the Facility.

241.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2014/2015 Annual Report for the Facility.

242.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator certified that the Facility was in compliance with the Storm Water Permit in its 2014/2015 Annual Report.

243.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator's certification of compliance in the 2014/2015 Annual Report for the Facility was false because it failed to comply with each of the requirements of Section B(14) of the 1997 Permit.

244.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator's certification of compliance in the 2014/2015 Annual Report for the Facility was false because the Facility Owner and/or Operator had not developed and/or implemented BMPs to achieve compliance with the Storm Water Permit.

245.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator's certification of compliance in the 2014/2015 Annual Report for the Facility was false because the Facility Owner and/or Operator had not revised the Facility SWPPP to achieve compliance with the Storm Water Permit.

246.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator's certification of compliance in the 2014/2015 Annual Report Facility was false because the Facility Owner and/or Operator had not revised the Facility M&RP to achieve compliance with the Storm Water Permit.

247.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to describe instances of noncompliance at the Facility with the Storm Water Permit in its 2014/2015 Annual Report.

248.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include descriptions of steps taken to prevent recurrence of its noncompliance with the Storm Water Permit in its 2014/2015 Annual Report for the Facility.

**2015/2016 Annual Report**

249.   Plaintiff is informed and believes, and thereon alleges, that the Facility

Owner and/or Operator failed to conduct the required visual observations of unauthorized non-storm water discharges during the 2015/2016 Reporting Year.

250.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct the required visual observations of authorized non-storm water discharges during the 2015/2016 Reporting Year.

251.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct the required visual observations of BMPs during the 2015/2016 Reporting Year.

252.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to conduct the required visual observations of each discharge location during sample events in the 2015/2016 Reporting Year.

253.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to collect storm water samples from all discharge locations at the Facility during the 2015/2016 Reporting Year.

254.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to collect at least two (2) storm water samples during the 2015/2016 Reporting Year.

255.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to indicate the presence of all potential pollutants at the Facility in Attachment 2 of the 2015/2016 Annual Report.

256.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to analyze storm water samples for all required parameters including pollutants likely to be present in the Facility's storm water discharges during the 2015/2016 Reporting Year.

257.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator certified that the Facility was in compliance with the Storm Water Permit in its 2015/2016 Annual Report.

258.   Plaintiff is informed and believes, and thereon alleges, that the Facility

Complaint                                              34

1   Owner and/or Operator's certification of compliance in the 2015/2016 Annual Report is
2   false because it failed to comply with each of the requirements of Section XI of the
3   2015 Permit.

4          259.   Plaintiff is informed and believes, and thereon alleges, that the Facility
5   Owner and/or Operator's certification of compliance in the 2015/2016 Annual Report
6   was false because the Facility SWPPP was not revised to achieve compliance with the
7   Storm Water Permit.

8          260.   Plaintiff is informed and believes, and thereon alleges, that the Facility
9   Owner and/or Operator's certification of compliance in the 2015/2016 Annual Report
10  was false because the Facility M&RP was not revised to achieve compliance with the
11  Storm Water Permit.

12         261.   Plaintiff is informed and believes, and thereon alleges, that the Facility
13  Owner and/or Operator failed to describe instances of noncompliance with the Storm
14  Water Permit at the Facility in its 2015/2016 Annual Report.

15         262.   Plaintiff is informed and believes, and thereon alleges, that the Facility
16  Owner and/or Operator failed to include descriptions of steps taken to prevent recurrence
17  of its noncompliance with the Storm Water Permit in its 2015/2016 Annual Report.

18  **2016/2017 Reporting Year**

19         263.   Plaintiff is informed and believes, and thereon alleges, that the Facility
20  Owner and/or Operator failed to conduct the required visual observations of unauthorized
21  non-storm water discharges during the 2016/2017 Reporting Year.

22         264.   Plaintiff is informed and believes, and thereon alleges, that the Facility
23  Owner and/or Operator failed to conduct the required visual observations of authorized
24  non-storm water discharges during the 2016/2017 Reporting Year.

25         265.   Plaintiff is informed and believes, and thereon alleges, that the Facility
26  Owner and/or Operator failed to conduct the required visual observations of BMPs during
27  the 2016/2017 Reporting Year.

28         266.   Plaintiff is informed and believes, and thereon alleges, that the Facility

Complaint                                      35

Owner and/or Operator failed to conduct the required visual observations of each discharge location during sample events in the 2016/2017 Reporting Year.

267.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to collect at least two (2) storm water samples during the 2016/2017 Reporting Year.

268.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to collect storm water samples from all discharge locations at the Facility during the 2016/2017 Reporting Year.

269.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to indicate the presence of all potential pollutants at the Facility in Attachment 2 of the 2016/2017 Annual Report.

270.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to analyze storm water samples for all required parameters including pollutants likely to be present in the Facility's storm water discharges during the 2016/2017 Reporting Year.

271.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator certified that the Facility was in compliance with the Storm Water Permit in its 2016/2017 Annual Report.

272.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator's certification of compliance in the 2016/2017 Annual Report is false because it failed to comply with each of the requirements of Section XI of the 2015 Permit.

273.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator's certification of compliance in the 2016/2017 Annual Report was false because the Facility SWPPP was not revised to achieve compliance with the Storm Water Permit.

274.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator's certification of compliance in the 2016/2017 Annual Report

was false because the Facility M&RP was not revised to achieve compliance with the Storm Water Permit.

275.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to describe instances of noncompliance with the Storm Water Permit at the Facility in its 2016/2017 Annual Report.

276.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator failed to include descriptions of steps taken to prevent recurrence of its noncompliance with the Storm Water Permit in its 2016/2017 Annual Report.

## V.   CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**Defendant's Discharges of Contaminated Storm Water in Violation of the Storm Water Permit Effluent Limitations and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

277.   Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

278.   Plaintiff is informed and believes, and thereon alleges, that Defendant failed and continues to fail to reduce or prevent pollutants associated with industrial activities at the Facility from discharging from the Facility through development and/or implementation of BMPs that achieve BAT/BCT.

279.   Plaintiff is informed and believes, and thereon alleges, that discharges of storm water containing levels of pollutants that do not achieve compliance with BAT/BCT standards from the Facility occur every time storm water discharges from the Facility.

280.   Defendant's failure to develop and/or implement BMPs that achieve the pollutant discharge reductions attainable via BAT or BCT at the Facility is a violation of the Storm Water Permit and the CWA. *See* 1997 Permit, Effluent Limitation B(3); 2015 Permit, Section I(D) (Finding 32), Effluent Limitation V(A); 33 U.S.C. § 1311(b).

Complaint                                                    37

281. The Facility Owner and/or Operator violates and will continue to violate the Storm Water Permit Effluent Limitation each and every time storm water containing levels of pollutants that do not achieve BAT/BCT standards discharges from the Facility.

282. Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator's violations of the Storm Water Permit Effluent Limitation and the Clean Water Act are ongoing and continuous.

283. Each and every violation of the Storm Water Permit Effluent Limitation is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

284. By committing the acts and omissions alleged above, the Facility Owner and/or Operator is subject to an assessment of civil penalties for each and every violation of the CWA occurring from February 9, 2013, to the present, pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

285. An action for injunctive relief is authorized by CWA Section 505(a), 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

286. An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth hereafter.

## SECOND CAUSE OF ACTION

### Defendant's Discharges of Contaminated Storm Water in Violation of Storm Water Permit Receiving Water Limitations and the Clean Water Act.

### 33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)

287. Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

288. Plaintiff is informed and believes, and thereon alleges, that discharges of storm water containing levels of pollutants that adversely impact human health and/or the

environment occur each time storm water discharges from the Facility.

289.   Plaintiff is informed and believes, and thereon alleges, that storm water containing levels of pollutants that cause or contribute to exceedances of WQSs occur each time storm water discharges from the Facility.

290.   The Facility Owner and/or Operator violates and will continue to violate the Storm Water Permit Receiving Water Limitation each and every time storm water containing levels of pollutants that adversely impacts human health and/or the environment discharges from the Facility.

291.   The Facility Owner and/or Operator violates and will continue to violate the Storm Water Permit Receiving Water Limitation each and every time storm water containing levels of pollutants that causes or contributes to exceedances of a WQS discharges from the Facility.

292.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator's violations of Receiving Water Limitations of the Storm Water Permit and the CWA are ongoing and continuous.

293.   Each and every violation of the Storm Water Permit Receiving Water Limitations is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

294.   By committing the acts and omissions alleged above, the Facility Owner and/or Operator is subject to an assessment of civil penalties for each and every violation of the CWA occurring from February 9, 2013, to the present, pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

295.   An action for injunctive relief under the Clean Water Act is authorized by Section 505(a), 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm Plaintiff have no plain, speedy, or adequate remedy at law.

296.   An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth hereafter.

### THIRD CAUSE OF ACTION

**Defendant's Discharges of Non-Storm Water in Violation of the
Storm Water Permit and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

297.   Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

298.   Plaintiff is informed and believes, and thereon alleges, that prohibited non-storm water discharges have discharged and continue to discharge from the Facility, in violation of the Storm Water Permit and/or CWA Section 301(a). 33 U.S.C. § 1311(a).

299.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator's violations of Discharge Prohibitions of the Storm Water Permit are ongoing and continuous.

300.   Each and every violation of the Storm Water Permit Discharge Prohibitions is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

301.   By committing the acts and omissions alleged above, the Facility Owner and/or Operator is subject to an assessment of civil penalties for each and every violation of the CWA occurring from February 9, 2013, to the present, pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

302.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

303.   An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth hereafter.

# FOURTH CAUSE OF ACTION

**Defendant's Failure to Adequately Develop, Implement, and/or Revise a Storm Water Pollution Prevention Plan in Violation of the Storm Water Permit and the Clean Water Act.**

## 33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)

304.   Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

305.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator has failed and continues to fail to develop an adequate SWPPP for the Facility, in violation of the Storm Water Permit.

306.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator has failed and continues to fail to adequately implement the SWPPP for the Facility, in violation of the Storm Water Permit.

307.   Plaintiff is informed and believes, and thereon alleges, that Facility Owner and/or Operator has failed and continues to fail to adequately revise SWPPPs for the Facility, in violation of the Storm Water Permit.

308.   The Facility Owner and/or Operator has been in violation of the Storm Water Permit at the Facility every day from February 9, 2013, to the present.

309.   The Facility Owner and/or Operator's violations of the Storm Water Permit and the CWA at the Facility are ongoing and continuous.

310.   The Facility Owner and/or Operator will continue to be in violation of the Storm Water Permit and the CWA each and every day the Facility Owner and/or Operator fails to adequately develop, implement, and/or revise the SWPPPs for the Facility.

311.   Each and every violation of the Storm Water Permit SWPPP requirements at the Facility is a separate and distinct violation of the CWA.

312.   By committing the acts and omissions alleged above, the Facility Owner and/or Operator is subject to an assessment of civil penalties for each and every violation of the CWA occurring from February 9, 2013, to the present, pursuant to Sections 309(d)

and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

313.   An action for injunctive relief under the CWA is authorized by Section 505(a) of the CWA. 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

314.   An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

WHEREFORE, Plaintiff prays for judgment against the Defendant as set forth hereafter.

## FIFTH CAUSE OF ACTION

**Defendant's Failure to Adequately Develop, Implement, and/or Revise a Monitoring and Reporting Plan in Violation of the Storm Water Permit and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

315.   Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

316.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator has failed and continues to fail to develop adequate M&RPs for the Facility, in violation of the Storm Water Permit.

317.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator has failed and continues to fail to adequately implement M&RPs for the Facility, in violation of the Storm Water Permit.

318.   Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator has failed and continues to fail to adequately revise M&RPs for the Facility, in violation of the Storm Water Permit.

319.   The Facility Owner and/or Operator has been in violation of the Storm Water Permit monitoring requirements at the Facility every day from February 9, 2013, to the present.

320. The Facility Owner and/or Operator's violations of the Storm Water Permit monitoring requirements and the CWA at the Facility are ongoing and continuous.

321. The Facility Owner and/or Operator will continue to be in violation of Section B and Provision E(3) the 1997 Permit, Section XI of the 2015 Permit, and the CWA each and every day it fails to adequately develop, implement, and/or revise M&RPs for the Facility.

322. Each and every violation of the Storm Water Permit M&RP requirements at the Facility is a separate and distinct violation of the CWA.

323. By committing the acts and omissions alleged above, the Facility Owner and/or Operator is subject to an assessment of civil penalties for each and every violation of the CWA occurring from February 9, 2013, to the present, pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

324. An action for injunctive relief under the CWA is authorized by Section 505(a) of the CWA. 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

325. An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

WHEREFORE, Plaintiff prays for judgment against the Defendant as set forth hereafter.

## SIXTH CAUSE OF ACTION

**Defendant's Failure to Report as Required by the Storm Water Permit in Violation of the Storm Water Permit and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

326. Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

327. Plaintiff is informed and believes, and thereon alleges, that the Facility

Complaint                                43

Owner and/or Operator has failed and continues to fail to submit accurate Annual Reports to the Regional Board, in violation of Sections B(14), C(9), and C(10) of the 1997 Permit.

328. Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator's Annual Reports failed to meet the monitoring and reporting requirements of the Storm Water Permit, in violation of Section B(14) of the 1997 Permit.

329. Plaintiff is informed and believes, and thereon alleges, that the Facility Owner and/or Operator's Annual Reports fail to meet the requirements of Section XVI(B) of the 2015 Permit.

330. The Facility Owner and/or Operator has been in violation of the Storm Water Permit reporting requirements every day since at least February 9, 2013.

331. The Facility Owner and/or Operator's violations of the reporting requirements of the Storm Water Permit and the CWA are ongoing and continuous.

332. By committing the acts and omissions alleged above, the Facility Owner and/or Operator is subject to an assessment of civil penalties for each and every violation of the CWA occurring from February 9, 2013, to the present, pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

333. An action for injunctive relief under the CWA is authorized by Section 505(a) of the CWA. 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

334. An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

WHEREFORE, Plaintiff prays judgment against the Defendant as set forth hereafter.

## VI.   **RELIEF REQUESTED**

335. Plaintiff respectfully requests that this Court grant the following relief:

a.      A Court order declaring the Defendant to have violated and to be in violation of Sections 301(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1311(a) and (b); for discharging pollutants from the Facility in violation of a permit issued pursuant to Section 402(p) of the CWA, 33 U.S.C. § 1342(p), for failing to meet effluent limitations which include BAT/BCT requirements, for failing to meet receiving water limitations, and for failing to comply with the substantive and procedural requirements of the Storm Water Permit.

b.      A Court order enjoining Defendant from discharging pollutants without an NPDES permit;

c.      A Court order requiring Defendant to implement affirmative injunctive measures designed to eliminate Defendant's violations of the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act;

d.      A Court order assessing civil monetary penalties for each violation of the CWA at $37,500.00 per day per violation for all CWA violations after January 12, 2009, and $52,414.00 per day per violation for violations that occurred after November 2, 2015, as permitted by CWA Section 309(d), 33 U.S.C. § 1319(d) and Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4 (2009);

e.      A Court order awarding Plaintiff its reasonable costs of suit, including attorney, witness, expert, and consultant fees, as permitted by Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d); and

f.      Any other relief as this Court may deem appropriate.


Dated: February 9, 2018                    Respectfully submitted,

                                           LAWYERS FOR CLEAN WATER, INC.


                                           Layne Friedrich
                                           _____
                                           Layne Friedrich
                                           Attorney for Plaintiff

Complaint                          45